UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUXTON CRAIG HEYERMAN,

Plaintiff,

CASE NO. 1:09-CV-411

v.

HON. ROBERT J. JONKER

CALHOUN COUNTY PROSECUTOR'S OFFICE, et al.,

Defendants.

_____________________________________/

**OPINION AND ORDER**

Calhoun County convicted Buxton Heyerman of criminal sexual conduct in the first degree in January 1988. In 1989, the Michigan Court of Appeals vacated the conviction and remanded the action for retrial due to an evidentiary violation. All interested parties–the prosecutor, the court, and Mr. Heyerman–received notice of the Court of Appeals' decision, but no one took the initiative to get the matter set for a new trial. Instead, Mr. Heyerman remained in the custody of the Michigan Department of Corrections until he filed pro se papers in state court calling attention to the problem. This was in 2007, approximately seventeen years after the Court of Appeals' ruling. The state court promptly acted in response to Mr. Heyerman's filing and dismissed with prejudice the case against him based on a violation of his Sixth Amendment right to a speedy trial. The question here is whether the Defendants named here are civilly liable to Mr. Heyerman under 42 U.S.C. § 1983 for the seventeen years he spent in MDOC custody without a new trial after the Michigan Court of Appeals vacated his conviction. Because the conduct of the prosecutor is shielded by absolute immunity, and because no municipal policy or practice was the moving force behind the delay,

Mr. Heyerman's claims under section 1983 must fail. Accordingly, the Court grants Defendants' second motion for summary judgment (docket # 38).

## FACTS

In 1987, Calhoun County charged Mr. Heyerman with criminal sexual conduct in the first degree. The state contended that Mr. Heyerman had sexually molested and anally and vaginally raped his ten-year-old stepdaughter over the course of several years. His wife testified against him and reported a conversation they had in which he admitted to the charge and stated that he did not know why he did it. The victim, his stepdaughter, also testified against him, and the examining physician offered forensic testimony in support of the physical acts having occurred. In January 1988, Mr. Heyerman was convicted of the charge. The court sentenced him to a term of 20 to 40 years' imprisonment. He appealed the conviction and his sentence.

In 1989, the Michigan Court of Appeals reversed his conviction. The Court of Appeals did not hold that there was insufficient evidence to convict Mr. Heyerman.[1] Instead, it held that under the then-existing Michigan marital privilege statute, it was reversible error to have permitted Mr. Heyerman's wife to testify without his consent about remarks he had made to her. The Michigan statute later was amended, and as written today would permit the testimony. After reversing the conviction on the evidentiary technicality, the Court of Appeals remanded the case to the Calhoun County trial court.

The trial court entered an acknowledgment of the reversal and remand in its Registry of Actions on June 9, 1989. For unknown reasons, however, the case slipped through the cracks.

---

[1] Mr. Heyerman's stepdaughter stated in an affidavit that, if called upon, she would testify again that Mr. Heyerman sexually assaulted her. (Docket # 38 ex. 9.) Additionally, Mr. Heyerman admitted to an MDOC psychological clinician that he vaginally (with his tongue at least) and anally penetrated his step daughter. (Docket # 38 ex. 8.) The MDOC report also states that he threatened to kill the victim, her sister, and her mother if she ever reported the abuse. (*Id.*)

Neither the court nor the prosecutor took further action on it. No one suggests any deliberate wrongdoing by any Defendant caused the inaction. Rather, the normal process of the court simply did not trigger in this case. Mr. Heyerman remained in state custody and continued to be treated as though he were a prisoner serving the sentence on his vacated conviction.

At least part of the problem was the legal strategy Mr. Heyerman adopted after his conviction was vacated. Mr. Heyerman's appointed appellate attorney sent him a copy of the Court of Appeals' opinion and explained to him in writing its meaning. The attorney also sent a copy of the opinion to Mr. Heyerman's sister and spoke with her about its meaning. In addition, he gave her a list of local trial attorneys who could take the remanded case. She then retained an attorney, Paul Adams, to represent Mr. Heyerman on the remanded case.

Mr. Heyerman and Mr. Adams met several times to discuss the case. They deliberately chose not to call the state's attention to the fact that his conviction had been vacated and no new trial set. Instead, Mr. Adams and Mr. Heyerman formulated a strategy under which Mr. Heyerman was to "stay put and quiet like a mouse." Def.'s ex. 2 at 91; *see also id.* at 76-78. Mr. Adams advised Mr. Heyerman that the statute of limitations on his crimes would expire in 1997, and that his best chance was to fly under the radar as long as he could in the hope of passing that mark. *Id.* For approximately ten years, from 1989 through 1998, Mr. Heyerman and Mr. Adams remained in regular contact. *See* Def.'s ex. 2 at 76-80. Mr. Heyerman now says he lost confidence in Mr. Adams in 1998 when, according to Mr. Adams, the statute of limitations deadline supposedly had passed and Mr. Adams still refused to take any action on his case.[2] *See id.* Mr. Adams "started the hemming and hawing about the more time the better," and Mr. Heyerman finally "got irritated" and

[2] The legal strategy ultimately led to suspension of Mr. Adams' license to practice law, and cost Mr. Adams' malpractice insurance $95,000 to settle with Mr. Heyerman. *See* Def.'s ex. 10, 11.

stopped contacting Mr. Adams. *Id.* at 79. Mr. Heyerman then began periodically telling the guards that he was supposed to have a new trial. As early as 2004, Mr. Heyerman began informing the Parole Board that he was supposed to receive a new trial.

Mr. Heyerman did not notify any authority outside the prison of his circumstances until 2007, when he filed pro se a writ of habeas corpus. He filed it with the wrong court, but the filing brought his case to the attention of the State, which moved immediately on it. In March 2007, the original trial court held a series of hearings that culminated in the dismissal with prejudice of the criminal charges against Mr. Heyerman on the ground that Mr. Heyerman had been denied a speedy trial under the Sixth Amendment as construed in *Barker v. Wingo*, 407 U.S. 514 (1972). Calhoun County did not appeal the decision.

In May 2009, Mr. Heyerman filed this section 1983 case against Calhoun County, the Calhoun County Prosecutor's Office, and the current Calhoun County prosecutor, Susan Mladenoff. (Docket # 1.) He also originally named as defendants the MDOC, the Director of MDOC, the Michigan Parole Board, and the Chairperson of the Michigan Parole Board, but those parties were dismissed because Mr. Heyerman never completed service of process on them. (Docket # 1; docket # 23.) Mr. Heyerman's counsel confirmed in open court that he and his client made a conscious decision not to pursue those claims. (*See* docket # 23.) The Defendants' filed a motion to dismiss, which the Court granted in part, but denied in other respects to permit development of a more complete factual record. Defendants' current motion for summary judgment is based on that record after plenary discovery.

As Mr. Heyerman's case now stands, his claim is very narrow. He is seeking money damages based only the violation of his Sixth Amendment right to a speedy trial, which the state court found had been violated when it dismissed with prejudice the charges against him. He is not alleging any

violation of his Eighth Amendment, Fourth Amendment, or even Fourteenth Amendment due process rights. Indeed, he is not making any claim directly challenging the fact of his confinement. His only claim is that Calhoun County and Ms. Mladenoff harmed him by failing to retry or dismiss his case for a length of time that violated his Sixth Amendment right to a speedy trial.[3]

**Discussion**

The only claim remaining in this case is one under section 1983 for violation of Mr. Heyerman's Sixth Amendment right to a speedy trial. The only remaining defendants are (1) Ms. Mladenoff, the current Calhoun County prosecutor, in her individual and official capacities; and (2) Calhoun County. Mr. Heyerman conceded at oral argument that Ms. Mladenoff is entitled in her individual capacity to absolute prosecutorial immunity. The claim against Ms. Mladenoff in her official capacity merges with the claim against Calhoun County, and for the reasons discussed below, both Defendants are entitled to summary judgment.

---

[3] Defendants contend that such a theory of liability–violation of the Sixth Amendment right to a speedy trial–cannot, alone, support a claim for damages in a section 1983 action. (Docket # 39 at 22-31.) Neither the parties nor the Court can find any case in any jurisdiction either denying or awarding damages for violation of the Sixth Amendment right to speedy trial. We can be glad for that, because most people would agree that situations like the one Mr. Heyerman faced should not happen. Even assuming a damage claim does exist, however, all parties agree that Defendants here would be permitted to argue to the civil jury that damages, if any, would be minimal because prompt retrial would have changed nothing. The Defendants could argue that Mr. Heyerman would have been convicted based on the overwhelming admissible evidence, and perhaps even based on Mr. Heyerman's post-conviction partial confession to anally penetrating (and vaginally penetrating with his tongue) his stepdaughter. Ultimately, it is not necessary for the Court to resolve these novel issues. The Court will assume in addressing the pending motions that damages are available under section 1983 in an appropriate Sixth Amendment speedy trial case, and that Mr. Heyerman would be able to present to the jury a case on compensable damages that would permit a rational trier of fact to reject the Defendant's mitigation argument.

I. Prosecutor Mladenoff

Ms. Mladenoff is the current Calhoun County prosecutor. She was not prosecutor at the time Mr. Heyerman's case was remanded from the Court of Appeals, but she served as an elected official in that capacity from 1996 through 2000, and then was again elected for a four-year term in 2008.

A. Individual Capacity

Ms. Mladenoff is entitled in this case to absolute prosecutorial immunity, and even Mr. Heyerman concedes this. The Court will briefly address the issue because it remained contested up to oral argument.

Prosecutorial activity is immune from suit if it is "intimately associated with the judicial phase of the criminal process." *Van De Kamp v. Goldstein*, 555 U.S. ----, 129 S. Ct. 855, 860 (2009). *Id.* at 860. In particular, preparation for trial and the activities that flow from trial are protected by absolute immunity. *Id.* at 862. Absolute prosecutorial immunity does not apply, however, "when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Id.* at 861. For example, absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application. *Id.* Similarly, it does not apply when the prosecutor completes administrative "duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities." *Id.* at 862.

But even some administrative tasks are subject to immunity, if the tasks are "necessary for a prosecutor to initiate or maintain a criminal prosecution." *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997); *see Van De Kamp*, 129 S. Ct. at 863-64. For example, a prosecutor's failure to adequately train and supervise employees in trial-related matters, or her failure to create a system to

manage information related to a trial, is subject to absolute immunity. *See Van De Kamp*, 129 S. Ct. at 861, 863-64. Although such failures involve the prosecutor's "office's administrative procedures," they relate to the "kind of administrative obligation . . . that itself is directly connected with the conduct of a trial." *Id.* at 862. Accordingly, the prosecutor is entitled to immunity. *See id.* Indeed, in most cases where the claim could be categorized as "an individual prosecutor's error in the plaintiff's specific criminal trial," the claim is one against which a prosecutor enjoys absolute immunity. *See id.*

Mr. Heyerman concedes, rightly, that Ms. Mladenoff is entitled to absolute immunity in this case. The violations he alleges stem from actions or omissions related directly to the judicial phase of the criminal process, specifically her failure to retry or dismiss the case against him. In effect, he is alleging damages from the prosecutor's failure to prosecute, which is an action intimately associated with the judicial phase of the criminal process. *See Van De Kamp*, 129 S. Ct. at 862. Similarly, any claim he has related to the prosecutor's failure to supervise and train her employees is subject to immunity because the failure relates directly to the activities "necessary for a prosecutor to initiat[e] or maintain a criminal prosecution." *See Ireland*, 113 F.3d at 1447; *Van De Kamp*, 129 S. Ct. at 862, 863-64. Accordingly, Mr. Heyerman concedes with good cause that Ms. Mladenoff is absolutely immune in her personal capacity from this suit. *See Van De Kamp*, 129 S. Ct. at 862, 863-64.

B. Official Capacity

Mr. Heyerman maintains his claim against Ms. Mladenoff in her official capacity. Ultimately, the viability of such a claim in this case merges into Mr. Heyerman's policy and practice claim against the County. A suit against an individual in her official capacity is a suit against the entity she represents. *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009); *Alkire v. Irving*, 330

F.3d 802, 810 (6th Cir. 2003). To succeed under section 1983 in an official-capacity claim against the agent of a municipality, a plaintiff must establish liability under *Monell* by showing that "the governmental entity's policy or custom . . . played a part in the violation of federal law." *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 564 (6th Cir. 2007) (alterations and internal quotation marks omitted). As discussed below, Mr. Heyerman has failed to establish any policy or custom on the part of Calhoun County that caused his injury. Accordingly, his claims against Ms. Mladenoff as an official of Calhoun County fail. *See id.* If instead Ms. Mladenoff was an agent of the State, Mr. Heyerman's section 1983 claim against her in her official capacity is barred by Eleventh Amendment sovereign immunity. *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). In either case, Ms. Mladenoff is entitled to summary judgment on the section 1983 claim against her in her official capacity.

II. Calhoun County

Under section 1983, a municipal entity may be held liable only when "action pursuant to official municipal policy of some nature causes a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To succeed on his claim, a plaintiff must show more than that the municipality employed a tortfeasor who harmed him. *See Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005). He must establish that he was injured as a direct result of acts that "the municipality has officially sanctioned or ordered" through "its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Holloway*, 220 F.3d at 773 (quoting *Monell*, 436 U.S. at 694).

A single act or decision, in appropriate circumstances, "may qualify as an official government policy, though it be unprecedented and unrepeated." *Id.* (internal quotation marks omitted). For a single decision to qualify as a policy, the decision must have been directed by someone who is a

decisionmaker for the government or who establishes governmental policy on that issue. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Furthermore, the decisionmaker must have "possesse[d] final authority to establish municipal policy with respect to the action ordered." *Id.* "[W]hether an official had final policymaking authority is a question of state law." *Id.* at 483. "The fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481-82. Instead, "[t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482-83. Similarly, a failure to act may amount to a policy under section 1983 if the plaintiff can show that decisionmaker knew of a problem and chose not to address it, thereby consciously adopting a policy of inaction. *See Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (holding that "the decision not to take any action to alleviate the problem of detecting missed arraignments constitutes a policy").

There is no policy or practice by Calhoun County that is the moving force behind the violation of Mr. Heyerman's Sixth Amendment right to a speedy trial. All parties agree that Calhoun County does not have an official policy of denying criminal defendants, in the first instance or on remand, a speedy trial. All parties also agree that no policy maker consciously and deliberately acted or ordered an action to be taken for the purpose of depriving Mr. Heyerman of his Sixth Amendment right to a speedy trial. *See Holloway*, 220 F.3d at 773. Mr. Heyerman contends instead that there was an unofficial policy based on the practice of Calhoun County to provide insufficient oversight over remanded cases. A single conscious choice by a policy maker, even if "unprecedented and unrepeated," may qualify as an official policy. *See id.* (quotation omitted). But Mr. Heyerman does not contend that there was a conscious choice by any policy maker. And although a municipality's

failure to put measures in place to alleviate a problem may also rise to the level of an official policy, that is only the case where the policy maker consciously chose a course of inaction in the face of a series of problems that should have alerted him to the need for additional measures. *See Oviatt*, 954 F.2d at 1477. Mr. Heyerman concedes that the error in his case is attributable to a mere mistake, not a conscious decision by a Calhoun County policy maker. He further concedes that his is the only case in Calhoun County to suffer such an oversight. Here, Calhoun County's failure to prevent this lone mistake cannot amount to a policy or practice because there is no evidence that Calhoun County knew or should have known of a problem that it chose to ignore. *See id.* There is no evidence from which one could conclude that Calhoun County deliberately adopted a policy of inaction. *See id.* To the contrary, it appears that Calhoun County's existing policies and practices had completely prevented the harm in this case until this particular case. *See id.* Because there was no official policy, no overt action by a policy maker, and no circumstances from which a jury could conclude that Calhoun County effectively adopted a policy of inaction in the face of known harms, Mr. Heyerman has failed to establish municipal liability for Calhoun County. *See Pembaur*, 475 U.S. at 481-83; *Holloway*, 220 F.3d at 773; *Oviatt*, 954 F.2d at 1477.

Mr. Heyerman also contends that the municipality should be liable even though it did not have a policy or practice that was the moving force behind his harm. He contends that the right to a speedy trial is such a critical right, and the harm from its violation so great, that a municipality should be held liable even for a single, unforeseeable failure simply because it did not have in place multiple levels of protection against the harm. Calhoun County, however, did have in place multiple levels of protection against the harm that occurred here. It sent a series of notices of the remand that amount to several layers of protection against the harm that occurred in this case, including notices to the clerk of the court, the trial court, the prosecutor, and Mr. Heyerman himself. And more than

that, Mr. Heyerman's contention that a municipality can be liable simply because a single, serious harm occurred finds no support in the section 1983 case law as it relates to municipal liability. To the contrary, municipalities specifically are not liable for mistakes or negligence of their employees, even mistakes that result in serious harm. *See Pembaur*, 475 U.S. at 478-79. They may be held liable only for their official policies or practices. *See id.* ("[W]hile Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others."). Mr. Heyerman put forward no evidence of any deliberate action by Calhoun County–not an official policy, not a single deliberate bad act, not even a deliberate choice to ignore a known problem. He has, at most, demonstrated that individuals in Calhoun County made a mistake in failing to timely retry or drop the charges against him. Accordingly, he cannot establish municipal liability, regardless of the resulting quantum of harm. *See id.*

**Conclusion**

Defendants are entitled to summary judgment because Mr. Heyerman cannot establish a policy or practice on the part of Calhoun County that caused his harm, and because the prosecutor is entitled in her individual capacity to absolute immunity in this case. Furthermore, the prosecutor in her official capacity is entitled to summary judgment regardless of whether she is an agent of the county, the State, or both. Accordingly, **IT IS ORDERED** that Defendants' motion for summary judgment (docket # 38) is **GRANTED**.

Dated: September 7, 2010

/s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE